## No. 13,897.

HASELWOOD *v.* MOORE ET AL.

(69 P. [2d] 248)

Decided June 1, 1937. Rehearing denied June 21, 1937.

Mr. WILLIAM L. BOATRIGHT, Mr. JOHN T. ADAMS, Mr. OTTO FRIEDRICHS, Mr. JEAN S. BREITENSTEIN, for plaintiff in error.

Messrs. Grant, Ellis, Shafroth & Toll, Mr. A. D. Quaintance, Mr. E. B. Evans, for defendants in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

In assertion of her rights, claimed by virtue of a vested remainder, plaintiff in error, as plaintiff below, brought this suit in ejectment against posssesion under a life estate which had terminated. Complaining that the trial court erroneously determined that she was entitled to a two-thirds interest only in the land, and to none of certain claimed water rights, she now assigns error to the judgment. She prayed for damages for the wrongful detention and use of the premises after the termination of the life estate and was awarded judgment therefor in the sum of $730.47, to which Alice T. Moore, one of the defendants in error, and defendant below, assigns cross error. Reference herein will be made to the parties as plaintiff and defendants or by name.

Prior to August 9, 1901, George H. Church was the owner in fee simple of the northeast quarter of section 11, township 2, south range 69 west, Jefferson County, Colorado. In his lifetime he had much to do with acquiring water rights and ditches for conveyance thereof in this particular locality, and had extensive holdings in connection therewith. On the above date he conveyed the described property to his daughter Mary C. Tucker by quitclaim deed containing the following provisions:

"Witnesseth, That the said party of the first part, for and in consideration of the sum of One Dollar, to the said party of the first part in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, hath remised, released, sold, conveyed and quitclaimed, and by these presents doth remise, release, sell, convey and quitclaim unto the said party of the second part, all the right, title, interest, claim and demand

which the said party of the first part hath in and to the following described real estate, situate, lying and being in the County of Jefferson and State of Colorado, to-wit: The North East quarter (1/4) of Section Eleven (11) in Township Two (2) South of Range Sixty-nine (69) west, *during the period of her natural life: Reserving and excepting from this conveyance all that portion of said described land now occupied by Church's Lower Lake and what may hereafter be occupied by it by reason of any enlargement thereof. Also reserving hereby the right of way for the irrigating ditch on said land which crosses the same diagonally from the northwest corner thereof to the southeast corner thereof.* The said party of the second part is hereby expressly forbidden to sell, mortgage or in anyway alienate or incumber said land, *and if the said party of the second part should die without issue then, in that case, the title to said land and all the interest therein conveyed hereby shall revert to the said party of the first part, his heirs and assigns forever; but if the said party of the second part shall die leaving child or children,* then this conveyance shall become absolute and the fee simple title to said land (reserving the part covered by said lake and the right of way for said ditch) shall vest in such child or children of said party of the second part.

"To have and to hold the same, together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title, interest and claim whatsoever, of the said party of the first part, either in law or equity, to the only proper use, benefit and behoof of the said party of the second part *during her natural life and to her children as aforesaid.*"

It appears that Alfred C. Tucker, and his wife Mary C. Tucker, the grantee, at the time were the owners of an adjoining quarter section of land, and had acquired fifty inches of water from certain ditches for use thereon, and occasionally conveyed said water across and onto the

lands described in the above deed. During her lifetime, Mary C. Tucker arranged with her sister-in-law, Alice T. Moore, a defendant herein, to take charge of the property conveyed to her by her father and collect the rents, and apply any amount above the expenses, to debts owing by grantee to defendant Moore. Defendant Moore went into possession and became the owner of the fifty inches of water owned and acquired by grantee and her husband and used on the adjoining property, and mortgaged same to the Ruby National Bank of Golden, another defendant, for the sum of $7,000. Three children were born to Mary C. Tucker, to wit: Alice T. Haselwood, the present plaintiff, Alfred C. Tucker and Eleanor Tucker Truder. Mary C. Tucker died June 24, 1930. Eleanor T. Truder predeceased her, leaving as her heirs, Thomas V. Truder, Mary Eleanor Truder and Alice K. Truder, defendants herein. These latter, heirs of a deceased child of Mary C. Tucker, claim a one-third interest in and to the property conveyed by the above recited deed. After the death of Mary C. Tucker, Alfred C. Tucker, her son, quit-claimed his interest in the land to his sister Alice T. Haselwood. Plaintiff contends that she thereby became entitled to the entire remainder of the lands, upon the theory that by the conveyance to her mother from Church it was the grantor's intention that the remainder, after the termination of the life estate, should vest only in children of, and surviving, Mary C. Tucker at the time of her death. She instituted this action in ejectment and contends that under the ''appurtenance'' clause of the deed grantor intended to and did convey fifty inches of water with the land. On this latter question she submitted evidence relating to the use of the water on the land over a period of years, and statements made by grantor prior to the making of the deed.

[■ Findings on the facts upon disputed questions, we will not disturb. At the conclusion of the evidence the court found that on the death of Mary C. Tucker the property descended to her two living children Alice T.

Haselwood and Alfred C. Tucker and to the heirs of Eleanor Tucker Truder. Alfred having quitclaimed to Alice, she was entitled to a two-thirds interest, the remaining one-third going to the heirs of Eleanor. The court further found that no water or right thereto was conveyed to Mary C. Tucker by the terms of the deed before us; that the fifty inches of water pledged to the Ruby National Bank by defendant Moore, is the property of the latter, whose right to the use and benefit of the premises ceased upon the death of Mary C. Tucker when her life estate terminated; that defendant Moore should account for the rents and profits from that date to the time of judgment, and it entered judgment as above mentioned in favor of plaintiff and against defendant Moore. On a consideration of the claims of the various parties hereto, the errors and cross errors assigned, we affirm the findings and judgment of the trial court.

██ The entire controversy rests upon an interpretation of the deed herein mentioned. We fail to see that it contains latent ambiguities, and leaves no room for oral testimony in explanation thereof or to vary its terms. The intent of the grantor must be gathered from a consideration of all parts of the deed taken together and it is not to be determined from any single isolated expression or provision. On its face it clearly conveys a life estate to Mary C. Tucker with remainder to her issue, if any. If no issue, the property to revert to the grantor or his heirs. It would be a strained interpretation to hold that issue did not mean children and children's children under the terms of this deed. Had the grantor desired otherwise, it was easily within his power to so express the grant. This he did not do, and we will not by implication do it for him. The deed unquestionably granted a life estate to Mary C. Tucker and in the event that she had issue, upon the birth of such issue the remainder of the fee vested as such issue came into being. The grantor made anticipatory provision for a remainder of the fee, and in doing so, clearly expressed his intention that that

remainder go to and vest in the issue of grantee. Vesting of the remainder depended on the contingency of the grantee having issue. He did not say "children living at the time of her death" or "children living at the time of the execution of the deed." If the deed were to be construed to mean children living at the time of its execution, it would defeat plaintiff's claim to any interest thereunder because she is an after-born child of grantee. Upon the death of Mary C. Tucker, the grantee, the property descended to her two living children and to the heirs of her deceased daughter.

 Plaintiff offered testimony to show that the grantor's intentions, when he made the deed, were to convey a water right of fifty inches of water of the Church ditch with the land. This intention also must be gathered from an interpretation of the deed as written. It is of primary significance that the grantor was a man experienced in transactions involving conveyance of water and water rights. That he knew the proper means, if he intended to make such a conveyance, cannot be doubted and is not questioned. His deed in this respect is silent, but it is clear and expressive when dealing with a subject closely related thereto; that of a reservation from the conveyance of land occupied by a lake and such land as might be occupied by future enlargements and a special reservation of the part of the land covered thereby, and for a right of way for an irrigating ditch crossing the land. There is no conveyance of any water by this deed and it is not sufficiently shown that any water ever was used on the land so as to bring it within the category of an appurtenance.

 Mary C. Tucker, having a life estate, could and did treat the property as her own together with the rents and profits therefrom. Any arrangement or agreement, such as was made with defendant Moore, to take possession of the premises and receive the rents and profits, could exist no longer than the life estate of the party granting such privilege. At Mrs. Tucker's death, the

right given to defendant Moore terminated and followed the remainder of the fee title.

The pronouncement against defendant Moore and in favor of plaintiff in the nature of an accounting for rents and profits after the termination of the life estate was proper, and the judgment in its entirety, being a fair and just determination of the property interests involved, is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE KNOUS concur.